IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **Hector Nieves** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | 16 CV 1063 |
| | ) | |
| v. | ) | Judge Elaine E. Bucklo |
| | ) | |
| | ) | Jury Demand |
| **Wexford Health Sources, Inc.** | ) | |
| **Dr. Parthasarathi Ghosh,** | ) | |
| **Dr. Impotep K. Carter, Dr. Saleh** | ) | |
| **Obaisi, Dr. Gerald Leef,** | ) | |
| **Dr. Richard Shute, Dr. Catalino** | ) | |
| **Bautista, Dr. Alma Martija,** | ) | |
| **LaTanya Williams, P.A.,** | ) | |
| **Candice Kaminski, R.N,** | ) | |
| **Marcus Hardy, Michael Lemke,** | ) | |
| **Michael Magana,Tarry Williams,** | ) | |
| **and Randy Pfister** | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Hector Nieves brings this action complaining of the above-captioned defendants as follows:

### Nature of the Action

1. Nieves files this action against Defendants seeking injunctive relief and compensatory and punitive damages caused by Defendants'

infliction of cruel and unusual punishment on Nieves by failing to provide medical care for Nieves' serious medical condition. Nieves has suffered for over 10 years because of Defendants' refusal to provide appropriate medical treatment. Defendants, all acting under the color of state law, showed deliberate indifferent to Nieves' injuries, prolonging his pain and suffering and exacerbating his physical injuries, all in violation of the Eighth Amendment and the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

## The Parties

2. Hector Nieves, prisoner identification number A72531, is incarcerated at Stateville Correctional Center ("Stateville") in Crest View, Illinois for the period 2005 to the present.

3. Defendant Wexford Health Sources, Inc. ("Wexford") is a private corporation. Wexford provides healthcare services to inmates at Stateville under a contract with the Illinois Department of Corrections.

4. Defendant Dr. Parthasarathi Ghosh was the medical director of Sateville for the period March 1, 2004 to July 5, 2005 and December 17, 2005 to March 31, 2011. He was an employee of Wexford. He is named in his individual capacity.

5. Dr. Impotep K. Carter was the medical director of Stateville for the period July 25, 2011 to May 10, 2012. He was an employee of Wexford. He is named in his individual capacity.

6. Dr. Saleh Obaisi has been the medical director of Stateville since August 2, 2012. He is an employee of Wexford. He is named in his individual and official capacity.

7. Dr. Gerald Leef is or was a physician working at Stateville. He is or was an employee of Wexford. He is named in his individual capacity.

8. Dr. Richard Shute is or was a physician working at Stateville. He is or was an employee of Wexford. He is named in his individual capacity.

9. Dr. Catalino Bautista is or was a physician working at Stateville. He is or was an employee of Wexford. He is named in his individual capacity.

10. Dr. Alma Martija is or was a physician working at Stateville. She is or was an employee of Wexford. She is named in her individual capacity.

11. LaTanya Williams works at Stateville as a physician's assistant. She is an employee of Wexford. She is named in her individual capacity.

12. Candice Kaminski works at Stateville registered nurse. She is an employee of Wexford. She is named in her individual capacity.

13. Marcus Hardy was a warden of Stateville from December, 2009 to January, 2013. He is named in his individual capacity.

14. Michael Lemke was a warden of Stateville from January, 2013 to December, 2013. He is named in his individual capacity.

15. Michael Magana was a warden of Stateville from December, 2013 to March, 2014. He is named in his individual capacity.

16. Tarry Williams was a warden of Stateville from December, 2013 to November, 2015. He is named in his individual capacity.

17. Randy Pfister is the current warden of Stateville. He is named in his individual and official capacity.

## Jurisdiction and Venue

18. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343. This suit is authorized by 42 U.S.C. § 1983 to redress the deprivation of rights, privileges, and immunities guaranteed by

the Eighth Amendment and the Fourteenth Amendment of the United States Constitution.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this lawsuit took place in this District.

**Factual Background**

20. In 1990, Nieves had surgery to insert screws into his broken hip. While Nieves was incarcerated at Pontiac Correctional Center for the period 1998 to 2003, Plaintiff complained about hip pain to the medical personnel. A subsequent x-ray revealed the screws inserted into his hip were broken.

21. Nieves continued to complain about his hip pain after he was transferred to Stateville in 2005. Finally, on December 28, 2005, Nieves was examined by Dr. Mark Gonzalez, an orthopedic, at the University of Illinois Medical Center at Chicago ("UIC"). Nieves told Dr. Gonzalez he had pain in the "left lateral thigh". Dr. Gonzalez observed Nieves had a "leg length discrepancy of approximately 4 cm". Plaintiff's left leg was shorter than his right. The orthopedic recommended x-rays and a follow-up visit.

22. On February 1, 2006, x-rays of Nieves' left hip were taken at UIC. The radiologist observed "a long partially threaded screw" that was

"fractured." The radiologist further observed "considerable bone resorption along the nail suggesting loosening" and marked posttraumatic arthritis.

23. Nieves was seen by another orthopedic, Dr. Samuel Chmell, at UIC on November 14, 2006. *See* Exhibit 3. Nieves told the doctor he had pain from the left buttock through his thigh. Because Nieves' left leg was 2 cm shorter than his right, Dr. Chmell ordered shoe lifts for Nieves.

24. Nieves continued to complain to the Stateville medical staff about pain and numbness in his neck, numbness in his hands and abdominal pain. Stateville medical failed to provide any meaningful treatment.

25. Nieves did not see Dr. Gonzalez again until May 11, 2011. Nieves continued to complain of hip pain. Dr. Gonzalez recommended Nieves undergo physical therapy for "relief of his symptoms." However, Dr. Gonzalez also recommended if physical therapy does "not work", then "injection versus removal of hardware" would be considered. Defendants knew of and agreed with the plan set forth by Dr. Gonzalez.

26. Nieves was examined by Dr. Gonzalez on July 20, 2011. Nieves still complained about the hip pain and said he did not receive the

prescribed physical therapy. Plaintiff continued to complain about pain in his left hip to Dr. Gonzalez on September 7, 2011. Plaintiff received only 2 of the 8 physical therapy sessions. Dr. Gonzalez prescribed completion of the physical therapy and nonsteroidal anti-inflammatory drugs for the pain.

27. On December 24, 2012, Defendant Obaisi noted Plaintiff continued to have severe pain in his hip and leg length discrepancy. Furthermore, Dr. Obaisi admitted the shoe lift and physical therapy were not effective.

28. Nieves continued to complain about hip pain to Dr. Gonzalez at a March 27, 2013 examination. Dr. Gonzalez noted Nieves suffered from degenerative joint disease and had not had physical therapy in over a year. Dr. Gonzalez recommended Plaintiff return to physical therapy.

29. On January 4, 2016, Dr. Chmell examined Nieves. *See* Exhibit 10. Dr. Chmell noted that Nieves will need "total hip replacement in the future."

30. In addition to his hip problem, Plaintiff developed a serious spine issue that must be treated before his hip issue can receive treatment. Nieves was seen by Dr. Jose A. Rodriguez at UIC on May 5, 2016. Dr.

Rodriguez diagnosed Plaintiff with "cervical spondylotic myelopathy that puts him at high risk of paralysis, if he falls."

31. Dr. Thomas M. Anderson at UIC wrote a report comparing the condition of the hip in February 1, 2006 to the condition in September 28, 2015. The report found over the course of nine years, Nieves' left hip showed "consistent with worsening degenerative change/osteoarthrosis."

32. Plaintiff's condition has worsened as Wexford has refused to provide adequate and consistent treatment for Plaintiff's hip. In subsequent visits to Stateville's medical personnel, Plaintiff has reported the pain in his hip at a level 10 out of 10.

### Plaintiff Filed Multiple Grievances to Obtain the Prescribed Medical Treatment.

33. Because Wexford ignored Plaintiff's deteriorating hip condition, Plaintiff filed a grievance on March 21, 2013 seeking hip injections to relieve the pain as recommended by Dr. Gonzalez. Plaintiff also sought a follow up visit to UIC.

34. Plaintiff filed another grievance on April 21, 2013 seeking pain medication for the hip pain and for the shoe lift. Plaintiff filed another grievance on April 21, 2014 seeking follow-up medical care for his hip pain.

8

On October 14, 2014, Plaintiff's grievance was deemed settled after Plaintiff received pain medication for his hip and a shoe lift.

35. Nieves filed additional grievances with Stateville to obtain proper medical care on September 14, 2015 and October 30, 2015. Stateville has yet to respond to either grievance.

**Defendants Failed to Provide Consistent Care.**

36. Defendants consistently failed to provide medical care recommended by the UIC specialists who examined Nieves. Even though the specialists at UIC prescribed physical therapy and pain medication to Nieves to manage the pain in his hip, Nieves received only intermittent physical therapy. As Dr. Gonzalez noted in the March 2013 exam of Nieves, Nieves went for more than a year without physical therapy.

37. Nieves also had to file a grievance in April 2013 to receive pain medication recommended by Dr. Gonzalez in May 2011. Even though Nieves was prescribed a shoe lift in his initial examination with Dr. Gonzalez in 2005, Nieves did not receive the lift until 2013.

38. Dr. Gonzalez recommended removal of the "hardware" if physical therapy and injections did not relieve the pain in Nieves' hip and

9

Dr. Chmell recommended a "total hip replacement" on January, 2016. Despite the worsening pain, Nieves has not had the recommended surgery.

39. Nieves' health has declined because of the inconsistent medical care, Nieves health has declined. Nieves has developed numbness in his extremity and loss of use of his right hand. Nieves may have also developed myelomalacia, a softening of the spinal cord. As Dr. Rodriguez noted in May 5, 2016, Nieves is at a "high risk of paralysis, if he falls."

40. Despite Nieves' deteriorating condition and high likelihood of paralysis, Defendants have failed to provide the recommended care on a consistent and timely basis.

### The Eighth Amendment Prohibits "Cruel and Unusual Punishment".

41. The Eighth Amendment states:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

42. 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State […], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

10

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

43. Each of the medical personnel employed by Wexford was deliberately indifferent to Plaintiff's medical needs and failed to take action to treat Plaintiff's medical condition despite their obligation to do so.

### Count I – Against Ghosh, Carter, Obaisi, Leef, Shute, Bautista, Martija, Williams and Kaminiski

44. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-43 as plead specifically herein.

45. Defendants Ghosh, Carter, Obaisi, Leef, Shute, Bautista, Martija, Williams and Kaminiski were all aware of Plaintiff's serious medical condition.

46. Subsequent to learning of Plaintiff's serious medical condition, each of them was deliberately indifferent to Plaintiff's health by failing to provide adequate medical care under the circumstances.

11

47. As a result of Defendants' failure to medically treat Plaintiff, Plaintiff suffered pain and suffering beginning in December 28, 2005 to the present.

48. Each of Defendants' actions or failure to act was taken under color of law.

49. Defendants' failure to treat Plaintiff's left hip and other conditions violated the Eighth Amendment and Fourteenth Amendment of the U.S. Constitution and 42 U.S.C § 1983.

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor and against Defendants Ghosh, Carter, Obaisi, Leef, Shute, Bautista, Martija, Williams and Kaminiski for:

    a. Damages for the violations of his rights and for compensation for pain and suffering due to injuries mentioned above;

    b. Damages for emotional distress suffered due to the conditions mentioned above;

    c. The costs of this suit, including reasonable attorneys' fees;

    d. Punitive damages; and

    e. Any further relief that this Court deems appropriate and just.

## Count II Against Hardy, Lemke, Magana, Williams and Pfister

50. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-49 as plead specifically herein.

51. Nieves' condition has persisted for over 10 years. Each of the Stateville wardens knew of Nieves' serious medical condition and the deliberate indifference to which he was subjected and had the duty to prevent the constitutional violations which occurred within their supervision and control.

52. When prison officials delay access to necessary medical care they are liable. Prison officials are liable for failing to remedy these violations of a prisoner's constitutional rights.

53. Defendants Hardy, Lemke, Magana, Williams and Pfister should be liable for punitive damages as a result of their actions.

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor and against Defendants Hardy, Lemke, Magana, Williams and Pfister for:

    a. Damages for the violations of his rights and for compensation for pain and suffering due to injuries mentioned above;

      b.      Damages for emotional distress suffered due to the conditions mentioned above;

      c.      The costs of this suit, including reasonable attorneys' fees;

      d.      Punitive damages; and

      e.      Any further relief that this Court deems appropriate and just.

## **Count III – Against Wexford for its Unconstitutional Policy.**

54.    Plaintiff re-alleges and incorporates by reference paragraphs 1-53 as plead specifically herein.

55.    Wexford is liable to the Plaintiff because it maintains an unconstitutional policy and adopts a custom of deliberate indifference to the known or obvious consequences of its practices.

56.    Wexford supports a policy that sanctions the maintenance of prison conditions that infringes upon the constitutional rights of prisoners. This corporate policy causes the constitutional violations.

57.    This policy has resulted in Nieves to continue to wait for proper and consistent treatment for his hip.

58. This policy included intentionally not providing surgery for Nieves even though he was recommended surgery by outside independent physicians.

59. Wexford has an obligation to provide Plaintiff medical care, but it has refused to do so.

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor and against Defendant Wexford for:

    a. Damages for the violations of his rights and for compensation for pain and suffering due to injuries mentioned above;

    b. Damages for emotional distress suffered due to the conditions mentioned above;

    c. The costs of this suit, including reasonable attorneys' fees;

    d. Punitive damages; and

    e. Any further relief that this Court deems appropriate and just.

## Count IV - Wexford Is Liable under *Respondent Superior* for the Acts of Its Employees.

60. Plaintiff re-alleges and incorporates by reference paragraphs 1-59 as plead specifically herein.

61. Wexford is a private corporation that has contracted to provide essential government services which are health care services to Nieves and other prisoners.

62. Wexford should be held liable under 42 U.S.C. § 1983 for the acts of its employees.

63. Wexford was acting under color of state law. This Court is to impose liability under § 1983 for *respondent superior*.

64. Under a number of cases the Seventh Circuit has held that a private corporation is not vicariously liable under § 1983 for its employees depriving the civil rights of others. These decisions are in accord with other circuits that have extended the decision in *Monell v. Department of Social Services,* 436 U.S. 658 (1978) to private corporations.

65. The *Monell* decision to foreclose vicarious liability for civil rights violations caused by a municipal employee should not be extended to private corporations. *See Shields v. Illinois Dep't of Corrections et al.,* 746 F. 3d (7th Cir. 2014).

66. An employer such as Wexford should be held responsible for damages cause by employees whose actions it can control and from whose actions it profits.

67. If *respondent* superior liability were available Wexford could not escape liability by diffusing responsibility across its employees and prisoners would be far better protected from violations of their constitutional rights.

68. There is no tradition of providing immunity to employees of private employers. *See Richardson v. McKnight*, 521 U.S. 399, 412 (1997); *Wyatt v. Cole*, 504 U.S. 158, 167-68 (1991).

69. *Richardson* and *Wyatt* suggest *respondent superior* liability pursuant to § 1983 against private corporations should not be foreclosed. Private prison employees and prison medical providers have frequent opportunity, through their position, to violate an inmate's constitutional rights.

70. Allowing liability pursuant to *respondent superior* incentivizes private medical providers at prisons to provide sufficient and adequate care.

71. Private corporations such as Wexford should not be insulated from *respondent superior* liability pursuant to § 1983.

72. Defendant Wexford should be liable for punitive damages as a result of its actions.

17

WHEREFORE, Plaintiff prays that this Court determine Wexford be found liable under the doctrine of *respondent superior* for the actions of its employees, and that judgment be entered against Wexford for damages caused to the Plaintiff as a result of the actions of its employees, plus attorneys' fees, expense and costs and punitive damages.

### COUNT V – For Injunctive Relief of Defendants in Their Official Capacity

73. Plaintiff re-alleges and incorporates by reference paragraphs 1-72 as plead specifically herein.

74. Defendant Obaisi is the current medical director of Stateville.

75. Defendant Pfister is the current warden of Stateville.

76. Defendant Wexford is currently providing medical services to Stateville under a contract with the Illinois Department of Corrections.

77. Defendants Obaisi, Pfister, and Wexford should be directed by this Court to arrange for surgery for Nieves on his spine and left hip. Unless this Court directs the Defendants to perform the surgery, Nieves will continue to be harmed.

78. This Court has jurisdiction and authority to enter the relief requested by Nieves under the statutes cited above.

18

WHEREFORE, Plaintiff prays that this Court enter an order directing Defendants Obaisi, Pfister and Wexford to perform surgery and provide any other necessary medical care and that Plantiff be awarded attorneys' fees, expense and costs and any other relief the Court deems equitable.

## Jury Demand

The Plaintiff, Hector Nieves, requests a trial by jury.

/s David Kim
Attorney for Plaintiff

Dated: September 29, 2016

Stephen B. Diamond (IL 0629421)
(sdiamond@lawdiamond.com)
David Kim (IL 6303707)
(dkim@lawdiamond.com)
Stephen B. Diamond, P.C.
332 S. Michigan Avenue, Suite 1000
Chicago, Illinois  60604
(312) 939-6280